UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONYA LYSHON GIBSON,<br><br>                 Plaintiff,<br><br>          v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>                 Defendant. | Case No. ED CV 11-795-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.  INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when he: (1) failed to properly consider the doctors' opinions; (2) concluded that Plaintiff was not credible; and (3) posed an incomplete hypothetical question to the vocational expert.  For the reasons discussed below, the Court finds that the ALJ erred and remands the case to the Agency for further proceedings consistent with this Memorandum Opinion and Order.

## II. SUMMARY OF PROCEEDINGS

In April 2007, Plaintiff applied for SSI and DIB, alleging that she was disabled due to back pain, a bulging disc in her neck, shoulder and elbow problems, and bipolar disorder. (Administrative Record ("AR") 61, 62, 140-50, 189.) Her application was denied initially and on reconsideration. (AR 66, 70, 77, 80.) She then requested and was granted a hearing before an ALJ. On September 30, 2009, she appeared with counsel at the hearing. (AR 3-31.) On May 19, 2010, the ALJ issued a decision denying benefits. (AR 45-56.) Plaintiff appealed to the Appeals Council, which denied review. (AR 32-35, 38.) This action followed.

## III. ANALYSIS

A.  <u>The ALJ's Treatment of the Doctors' Opinions</u>

   1.  <u>The Mental Impairments</u>

Plaintiff contends that the ALJ erred in rejecting the opinions of treating physician Thomas Sachy and examining psychologist David Rush. (Joint Stip. 10-11.) Dr. Sachy, a pain management specialist, opined that Plaintiff's bipolar disorder and chronic pain syndrome would "seriously limit" but not preclude her ability to understand and carry out even simple instructions, work with others without distractions, make simple work-related decisions, ask simple questions, respond appropriately to instruction and criticisms, and get along with others. (AR 630.) In his view, these impairments rendered her completely "unable" to maintain attention for two-hour segments, maintain regular attendance, sustain an ordinary routine, complete a normal workweek, respond to changes in a routine work setting, and deal with normal work stress. (AR 630.)

Dr. Rush's findings were somewhat less extreme, but he still concluded that Plaintiff: (1) would have difficulty remembering and following complex, but not simple, instructions; (2) might have some difficulty interacting with coworkers, supervisors, and the public; (3) would likely have difficulty adhering to a work schedule and meeting production norms; and (4) would likely decompensate under stressful conditions. (AR 439-40.)

The ALJ rejected the bulk of both doctors' findings, concluding that Plaintiff could follow simple instructions; might have difficulty maintaining concentration, persistence or pace for more than two-hour blocks of time; and would be limited to low stress jobs and jobs where contact with the public was incidental. (AR 50.) In reaching this conclusion, the ALJ placed significant weight on the purportedly contrary opinions of reviewing psychologists Judith Piat and John Cooper. (AR 54.) For the following reasons, the Court finds that the record does not support the ALJ's findings.

As to Dr. Sachy's opinion, the ALJ discounted it because he found that it was not supported by Dr. Sachy's objective findings. (AR 53.) Arguably, the record supports this justification to some extent. Although Plaintiff's mental health records are voluminous and present a more varied picture of her condition than the ALJ's summation might suggest, Dr. Sachy's treatment notes reflect that at times Plaintiff was generally doing well on her medications. (AR 338, 484, 486, 533, 543.) For example, in 2008, Dr. Sachy gave Plaintiff a Global Assessment of Functioning score of 70 (AR 628), reflecting someone who was functioning at a relatively moderate level. *See* Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed., text revision 2000). This seems to undermine Dr. Sachy's overall opinion that

Plaintiff was not functional. *See Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding internal inconsistencies within physician's report supports rejection of the doctor's opinion).

The ALJ also relied on the fact that Plaintiff's mental health treatment under Dr. Sachy was not "consistent with what one would expect if the claimant were truly disabled . . . ." (AR 53.) The Court is not convinced that this is a valid basis for questioning Dr. Sachy's opinion. The record establishes that Plaintiff was treated with medication and therapy for her psychiatric disorders. (AR 274-355, 532-626.) It is not clear what more could have or should been done and the ALJ has not explained that in his decision.

Thus, the Court agrees with only one of the ALJ's justifications for questioning the treating doctor's opinion and, as a result, will remand the issue back to the Agency for further consideration.

As to Dr. Rush, the ALJ failed to provide an adequate explanation for tacitly rejecting his opinion that Plaintiff would have difficulty interacting with coworkers and supervisors, adhering to a work schedule, and meeting production norms. The ALJ's discussion of Dr. Rush's report seems to suggest that he believed that Dr. Rush's opinion was inconsistent with the objective findings. (AR 52.) But none of the findings mentioned by the ALJ relates to Dr. Rush's findings regarding Plaintiff's ability to interact with others in the workplace or to meet a work schedule. (AR 52.) Furthermore, despite the ALJ's claimed reliance on reviewing psychologists Piat and Cooper to support his ultimate conclusion that Dr. Rush was wrong, both doctors found that Plaintiff would be moderately limited in her ability to perform activities within a schedule, accept instructions and respond appropriately to criticism from supervisors, get along

4

with coworkers and peers, and respond appropriately to changes in the workplace.  (AR 449-50, 502-03.)  Thus, Dr. Rush's opinion was not contradicted and, therefore, the ALJ was required to provide clear and convincing reasons for rejecting it, *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), which he failed to do.

In the end, the Court sees the issue of Plaintiff's ability to cope in the workplace differently than the ALJ.  It appears to the Court that all four doctors who offered opinions on the issue concluded that Plaintiff would have difficulties.  Yet, the ALJ reached the opposite conclusion.  On remand, he should take another look at the issue and, if he again concludes that Plaintiff will be able to hold down a job despite her limitations, he should explain the basis of such a view and why the doctors' opinions that contradict this view are mistaken.

2.   <u>The Physical Impairments</u>

The ALJ determined that Plaintiff was capable of standing or walking for six hours in an eight-hour workday.  (AR 50.)  In so doing, he gave significant weight to the opinions of state agency reviewing physicians Howard Colier and Terry Banks and rejected the contrary opinion of examining physician Lisa Welch, who found that Plaintiff was unable to stand and/or walk for more than two hours in an eight-hour workday.  (AR 54, 433, 442.)  Plaintiff contends that this was error.  For the following reasons, the Court finds that there was no error here.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician.  *Lester*, 81 F.3d at 830.  In order to discount the opinion of an examining physician that is contradicted by a non-examining physician, an ALJ must provide

specific and legitimate reasons for doing so that are supported by substantial evidence in the record. *Id.* at 830-31.

Examining physician Lisa Welch determined that Plaintiff could not stand or walk for more than two hours. The ALJ discounted this assessment because he found that it was not supported by Dr. Welch's findings or the other medical evidence in the record. The ALJ pointed to an X-ray of Plaintiff's lumbar spine--which revealed minimal degenerative changes--and an MRI of her cervical spine--which revealed no spinal or neural foraminal stenosis. (AR 48, 51-52.) These are legitimate reasons for rejecting Dr. Welch's opinion, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding ALJ may discount physician's opinion which is unsupported by record or by objective medical findings), and are supported by substantial evidence in the record.

At an August 2007 examination, Dr. Welch reported few objective signs of impairment. She noted that Plaintiff had a "slow, but steady gait," was able to perform finger-to-nose and heel-to-knee movements, and had a negative Romberg's sign, despite some tenderness in the lumbar muscles. (AR 432-33.) Dr. Welch apparently did not review Plaintiff's medical records, including X-rays of her lumbar spine taken in August 2003 and October 2004, which revealed little or no abnormality. (AR 430, 573, 574.) Thus, the ALJ's decision to discount Dr. Welch's opinion because it was not supported by the medical evidence and accept, instead, the opinions of the reviewing physicians, who had considered all of the evidence in the record and whose opinions were more in line with the evidence, will not be disturbed.

B.   <u>The ALJ's Credibility Findings</u>

The ALJ found that Plaintiff was not credible. Plaintiff argues that he erred in doing so. For the following reasons, the Court agrees.

The ALJ found that Plaintiff's testimony was not credible because: (1) she had not been compliant with her treatment plan; (2) there was evidence that she had engaged in drug-seeking behavior and medicaid fraud; (3) she had not received the level of treatment that would be expected for the degree of impairment she alleged; and (4) her claimed impairments were not supported by the objective medical evidence. (AR 52-53.)

These are legitimate reasons for questioning Plaintiff's testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding lack of objective medical evidence to support claims is a factor ALJ can consider in evaluating claimant's testimony); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding inconsistency between allegations of severe pain and conservative treatment was proper basis for discounting credibility); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (explaining ALJ may consider claimant's failure to follow prescribed course of treatment in evaluating credibility); *Massey v. Comm'r*, 400 Fed App'x 192, 194 (9th Cir. 2010) ("[T]he ALJ's interpretation that [the claimant] is engaged in drug-seeking behavior is a clear and convincing reason for disregarding his testimony."). As explained below, however, they are not all supported by the record.

The records establish that Plaintiff failed to comply with her treatment plan. On numerous occasions she failed to appear for therapy sessions, missed pain clinic appointments, and failed to

follow up on referrals. (AR 275, 293, 322, 339, 553, 625, 626.) Additionally, many of her care providers suspected that she was attempting to manipulate the system to obtain drugs. For example, in 2004, Dr. Mark Lafferty expressed concern that Plaintiff was using "a lot of narcotics" for her injuries; Dr. Sachy noted in 2006 and 2008 that Plaintiff appeared to be using more medications than expected and spoke with pharmacists about the issue; and Plaintiff on several occasions sought early refills after reporting that her medications had been lost or stolen. (AR 409, 476, 538, 539, 540, 571, 578, 615.) In January 2004, a pharmacist called Dr. Sachy's office to relay his suspicion that Plaintiff was abusing drugs. (AR 613.) In December 2008, Dr. Sachy noted that he had discussed "my rules" with Plaintiff and that she would receive no more "lost or stolen med refills." (AR 623.) Thus, the record supports these bases for questioning Plaintiff's testimony.

    The ALJ also questioned Plaintiff's testimony based on the fact that she had not received the type of treatment expected of someone with her conditions and did not exhibit objective signs that would support the degree of her claimed impairments. This is a mixed bag. As to Plaintiff's physical impairment, the Court would agree that there was little evidence to support her testimony that she was severely impaired and, if she were, presumably, her treatment would have been more aggressive. The Court cannot say the same about her psychiatric impairments, though. It seems without doubt that Plaintiff suffers from severe psychiatric problems. Examining psychologist Rush diagnosed her with a psychotic disorder and major depression. (AR 438.) Dr. Piat and Dr. Cooper, the reviewing doctors, concluded that she suffered from a psychotic or affective

disorder. (AR 453, 488.) And Dr. Sachy, her treating physician, concluded that she suffered from bipolar disease. (AR 628.) She was treated with medication and therapy, which seemed to control the manifestations of her condition to some extent. (AR 465, 628.) There is nothing in this record to suggest that there are objective signs exhibited by a typical patient suffering from a psychotic disorder like Plaintiff's which she did not exhibit. Nor is there any evidence that more aggressive treatment was warranted. *See Regennitter v. Comm'r Soc. Sec. Admin.,* 166 F.3d 1294, 1296 (9th Cir. 1999) (explaining ALJ cannot rely on claimant's alleged failure to obtain more aggressive treatment in questioning claimant's credibility where no doctor has provided alternative treatment modality). As such, the Court finds that there is no support for the ALJ's finding that any lack of objective signs or Plaintiff's failure to pursue unspecified treatment undermined her testimony regarding her mental impairment.

The issue that remains then is whether the ALJ's credibility finding should be upheld where, as here, two-and-a-half of the reasons he cited for questioning Plaintiff's credibility are valid and one-and-a-half are not. To reach this conclusion, the Court would have to find that the ALJ's error was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding error by ALJ in credibility determination is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on ... credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion."). On the record before the Court, it cannot conclude that this is the case. Questions remain as to whether Plaintiff's claims regarding her psychiatric impairment are truthful. In addition to the reasons set forth above, the Court notes

that examining psychologist David Rush, suspecting that Plaintiff was exaggerating her claims, administered a Rey's test--which is aimed at exposing malingering--and determined that Plaintiff passed the test, meaning she was not malingering. (AR 439.) This was objective evidence establishing her credibility and significant enough for Dr. Rush and Dr. Piat to conclude that she was not malingering. (AR 465.) The ALJ dismissed this finding, suggesting, it seems, that, following the test, Dr. Rush still suspected that Plaintiff was malingering. (AR 53.) The Court does not interpret the evidence this way. In his report, Dr. Rush explained that, because Plaintiff's behavior was so bizarre, he suspected that she was faking and administered the Rey's test to find out. (AR 439.) The test revealed that she was not faking and Dr. Rush then diagnosed her with a psychotic disorder. (AR 438.) On remand, the ALJ should reconsider the impact of the Rey's test results as well as the other evidence relating to credibility in determining whether Plaintiff is being truthful.

C.   <u>The ALJ's Hypothetical Question</u>

Plaintiff contends that the ALJ erred by including a limitation to "low stress jobs" in his hypothetical question to the vocational expert. She contends that the Dictionary of Occupational Titles ("DOT") does not discuss or define "low stress jobs" and, therefore, her tendency to decompensate under stress was not properly taken into account. (Joint Stip. at 15-16.) This argument is rejected.

Once a claimant has met her burden at step four of demonstrating that she cannot perform her past relevant work, the burden shifts to the Agency at step five to establish that she is capable of performing other jobs. 20 C.F.R. §§ 416.920(f)(g), 416.960(c); *see Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). This burden can be met

through the use of a vocational expert.  See 20 C.F.R. § 416.966(e); *see also Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  The Agency is also allowed to rely on the testimony of a vocational expert for information about specific jobs.  *Johnson*, 60 F.3d at 1435. Before relying on a vocational expert's testimony, however, an ALJ must inquire whether the testimony conflicts with the DOT.  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); Social Security Ruling 00-4p.

   Here, the ALJ called on a vocational expert to offer an opinion as to whether an individual with Plaintiff's physical and mental limitations, including her inability to tolerate anything other than low stress work, could work.  (AR 28.)  The vocational expert testified that such an individual could work as an office helper (DOT No. 239.567-010) and a "sorter" (defined in the DOT as a "nut sorter").  (DOT No. 521.687-086).  In response to the ALJ's inquiry, the expert testified that his opinion did not conflict with the DOT. (AR 29-30.)  Plaintiff's counsel did not challenge that testimony at the administrative hearing.  (AR 28-31.)  Nor has Plaintiff presented any evidence that the vocational expert's testimony that Plaintiff could perform these two "low stress" jobs was inconsistent with the DOT.  The fact that the DOT does not define work as "low stress" does not bar a vocational expert from offering an opinion that some jobs fall within this category and that Plaintiff could perform such jobs. Thus, Plaintiff's arguments here are rejected.  Obviously, however, in light of the Court's rulings herein, the ALJ will likely need to call a vocational expert on remand.  Assuming that this is the case and, assuming further that counsel feels that this is an issue that needs to be addressed, he should raise it at the hearing.

## IV. CONCLUSION

For the reasons set forth above, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this opinion.[1]

IT IS SO ORDERED.

DATED: September 28, 2012

*Patrick J. Walsh*

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\GIBSON, 795\Memo Opinion.wpd

---

[1] The Court has considered Plaintiff's request to remand the case to the Agency for an award of benefits. That request is denied. It is not clear that Plaintiff is entitled to benefits and further proceedings are necessary to develop the record and resolve that issue.